IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BENJAMIN RANDOLPH WOOD,

                Petitioner,

vs.

HUNTER ANGLEA, Warden, Sierra
Conservation Center,[1]

                Respondent.

No. 2:16-cv-02621-JKS

MEMORANDUM DECISION

Benjamin Randolph Wood, a state prisoner proceeding *pro se*, filed a Petition for a Writ

of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Wood is in the custody of the

California Department of Corrections and Rehabilitation and incarcerated at the Sierra

Conservation Center. Respondent has answered, and Wood has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On April 3, 2013, Wood was charged with assault with a deadly weapon (Count 1) and

assault with force likely to cause great bodily injury (Count 2) after he struck with a fire

extinguisher and his fists a man whom Wood mistakenly believed had broken into his car. The

information also alleged that Wood had three prior strike convictions and that Count 1 was a

serious felony. On direct appeal of his conviction, the California Court of Appeal laid out the

following facts underlying the charges against Wood and the evidence presented at trial:

> About 4:00 a.m. on March 26, 2012, Willado Ramirez was driving his vehicle,
> delivering newspapers in Redding. The driver's side window was down. While Ramirez
> was stopped at a traffic light, a vehicle pulled up behind him. [Wood] exited the vehicle,
> went to the driver's side of Ramirez's vehicle, and struck Ramirez in the head two or

---

[1]     Hunter Anglea, Warden, Sierra Conservation Center, is substituted for Josie
Gastelo, Warden, California Men's Colony. FED. R. CIV. P. 25(c).

three times with a fire extinguisher.  As Ramirez was attempting to ward off the fire extinguisher, the extinguisher activated, releasing some of its contents onto Ramirez and into his car.  [Wood] let go of the fire extinguisher and struck Ramirez with his fists three times in the back of the head.

Ramirez asked [Wood] why he was hitting him and explained that he was delivering newspapers.  [Wood] realized his mistake, apologized to Ramirez, and said he thought Ramirez was the person who had broken into [Wood's] pickup.  [Wood] asked Ramirez not to report him to the police and drove Ramirez to [Wood's] home, where he obtained a towel for Ramirez because he was bleeding.  At Ramirez's request, [Wood] drove Ramirez to the newspaper's office, where Ramirez was able to find someone to take over his route.  Still apologizing and asking Ramirez not to report him to the police, [Wood] drove Ramirez to the medical center and offered to pay his hospital bills.  [Wood] was arrested at the medical center after Ramirez told medical personnel that it was [Wood] who had assaulted him.

[Wood] testified that about two weeks before he assaulted Ramirez, he and his wife were awakened about 3:00 or 4:00 a.m. by their car's alarm going off, but they were unable to determine who was responsible.  Sometime after midnight on the day in question, [Wood] and his wife were again awakened by their car's alarm going off.  [Wood] and his wife went in search of the suspect and saw a Honda driven by a "thug"—like driver, who looked in [Wood's] direction and then "[took] off real fast."

[Wood] and his wife followed the Honda, and when it stopped at a light, [Wood] got out of the pickup with the fire extinguisher because he expected any occupants to get out and start a fight.  [Wood] approached quickly and asked Ramirez what he was doing.  A struggle ensued over control of the fire extinguisher and Ramirez got hit with it.  Ramirez, who was bloody, told [Wood] he was delivering papers.  [Wood] apologized and aided Ramirez in obtaining medical assistance.  [Wood] claimed that he hit Ramirez only once with the fire extinguisher and never hit him with his fists.

[Wood] was arrested at the medical center and released that same day with directions to appear in court on a specified date.  [Wood] failed to appear and was arrested in Los Angeles about nine months later.

*People v. Wood*, No. C074717, 2015 WL 5121442, at *2 (Cal. Ct. App. Aug. 31, 2015).

At the conclusion of trial, the jury convicted Wood of both counts.  In a bench trial, the court found Wood had three prior strike convictions, two of which also qualified for 5-year sentence enhancements.  The court sentenced Wood to 35 years to life imprisonment, consisting of 25 years to life imprisonment on Count 1, plus 5 years each for the two serious priors.  The

court also sentenced Wood to 25 years to life imprisonment on Count 2, which was stayed

pursuant to California Penal Code § 654.[2]

Through counsel, Wood appealed his judgment, arguing: 1) he could not be convicted on

both counts during the course of a single assault because each count stemmed from a different

subdivision that each described a different way of violating Penal Code Section 245; 2) the 25

years to life imprisonment sentence must be vacated because the offense of assault by means of

force likely to produce great bodily injury does not qualify for indeterminate sentencing; 3) the

five-year enhancement for discharge of a firearm in a grossly negligent manner must be vacated

because the evidence was insufficient to prove that the prior was a serious felony; and 4) the trial

court abused its discretion in denying his *Romero* motion[3] because it relied on factors

unsupported by substantial evidence.

In a reasoned, unanimous decision issued on August 31, 2015, the Court of Appeal

agreed that Count 1 and Count 2 were not separate offenses but instead constituted different

ways of committing the same offense under Penal Code § 245. *Wood*, 2015 WL 5121442, at *2-

4. Thus, even if Wood's conduct violated both subdivisions (a)(1) and (a)(4), the Court of

Appeal held that he could only be convicted of one violation of § 245 for one assault, and

reversed Count 2 and ordered it dismissed. *Id.* Upon agreement of the parties, the appellate

---

[2]    Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." CAL. PENAL CODE § 654.

[3]    *People v. Superior Court (Romero)*, 917 P.2d 628 (Cal. 1996). Under California Penal Law § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of sentencing under the state's Three Strikes law; a motion for such dismissal is referred to as a "*Romero*" motion based on the state supreme court's decision in that case. *Id.* at 632.

court additionally modified the judgment to award Wood 230 days of presentence custody credit and 230 days of conduct credit. *Id.* at *8. The court affirmed the judgment in all other respects. *Id.* Wood petitioned for rehearing, which was denied. On July 8, 2015, the California Supreme Court summarily denied review.

Proceeding *pro se*, Wood filed in the California Superior Court a petition for a writ of habeas corpus. In that petition, Wood argued that: 1) trial counsel rendered constitutionally-ineffective assistance; 2) appellate counsel was also ineffective for failing to raise trial counsel's ineffectiveness on appeal; 3) the trial court failed to *sua sponte* give a number of required jury instructions; 4) the various sentencing enhancement schemes applied against him must be deemed void for vagueness; 5) the trial court illegally enhanced his sentence using unproven prior convictions; and 6) the prosecutor committed misconduct in her closing statements by distorting or misstating material facts. The superior court denied the petition on procedural grounds and alternatively denied all claims on the merits for failure to state a *prima facie* case in a reasoned, unpublished opinion issued on October 21, 2016.

Wood then filed two *pro se* petitions for habeas relief in the California Court of Appeal. In those petitions, Wood raised the same claims he earlier raised to the Superior Court and also challenged his "illegal seizure and arrest." The petitions were denied without comment on October 15, 2015, and December 22, 2016, respectively. Wood additionally raised his claims in a *pro se* habeas petition in the California Supreme Court, which was likewise denied without comment on March 22, 2017.

While his state habeas petitions were still pending, Wood timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on October 31, 2016. Docket No. 1 ("Petition"); *see*

4

28 U.S.C. § 2244(d)(1)(A). The case is now before the undersigned judge and ripe for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Wood argues that: 1) trial and appellate counsel rendered ineffective assistance; 2) the trial court failed to adequately instruct the jury in light of the circumstances of his case; 3) his conviction should be reversed because of his "illegal seizure and arrest;" 4) he did not have fair notice sufficient to sustain his conviction of assault with a deadly weapon because he could not have known that a fire extinguisher was a deadly weapon; 5) his sentence was illegally enhanced; and 6) the prosecutor committed misconduct during her closing argument.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

**Ground 1.**     *Ineffective Assistance of Counsel*

Wood first contends that both trial and appellate counsel rendered ineffective assistance. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that appellate counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Wood must show that counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Wood first contends that trial counsel should have objected to his sentence as cruel and unusual. The Eighth Amendment, applicable to the States through the Fourteenth Amendment, proscribes the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII; *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008). The Supreme Court has held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation omitted). Wood cannot demonstrate that his is one of the exceedingly rare cases in which the sentence imposed raises an inference of gross disproportionality when compared to the crime committed. *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (sentence of 25 years to life for grand theft of $1,200 of golf clubs was not cruel and unusual); *Lockyer*, 538 U.S. at 77 (two consecutive sentences of 25 years to life for petty theft was not cruel and unusual). Recognizing this, it appears that trial counsel made the tactical decision not to object to the sentence as cruel and unusual and instead request that the court dismiss a prior "strike"

conviction that was used to enhance his sentence.[4]  Although counsel's request was rejected,[5] in

light of the fact that he was convicted of a violent offense with three prior strike convictions,

Wood cannot show that counsel's tactic was deficient, or that he was prejudiced as a result.

Wood also complains that he was not afforded substitute counsel.  The Sixth Amendment

right to counsel guarantees to an accused the concomitant rights to conflict-free representation

and the effective assistance of counsel.  *See Wheat v. United States*, 486 U.S. 153, 156 (1988);

*Strickland*, 466 U.S. at 686.  The denial of a *Marsden*[6] motion may implicate the Sixth

Amendment right to counsel.  *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc);

*Bland v. Cal. Dep't of Corrs.*, 20 F.3d 1469, 1475-76 (9th Cir. 1994), overruled on other grounds

in *Schell*, 218 F.3d at 1025-26; *Hudson v. Rushen*, 686 F.2d 826, 828-29 (9th Cir. 1982).  When

a criminal defendant requests a substitution of counsel, the trial court is constitutionally required

to inquire about the defendant's reasons for wanting a new attorney.  *Schell*, 218 F.3d at 1025

("[I]t is well established and clear that the Sixth Amendment requires on the record an

appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the

merits before the case goes forward.").  The Supreme Court has, however, "reject[ed] the claim

---

[4]    Under California Penal Law § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of sentencing under the state's Three Strikes law, CAL. PENAL CODE §§ 667(a)(1) & (b)-(I), 1170.12(a)-(d); a motion for such dismissal is referred to as a "*Romero*" motion based on the state supreme court's decision in that case.  *People v. Superior Court (Romero)*, 917 P.2d 628, 632 (Cal. 1996).

[5]    Similarly, Wood appears to argue that trial counsel should have objected to the characterization of the prior convictions as "violent."  The record indicates that the trial court used that term colloquially to explain why leniency was not warranted, and the prior convictions were not classified as "violent" within the meaning of CAL. PENAL CODE § 667(a)(1).

[6]    *People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a hearing to allow the defendant to explain its grounds).

that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). The ultimate question then is not whether the state trial court abused its discretion in denying Wood's motion but whether its denial "actually violated [Wood's] constitutional rights in that the conflict between [Wood] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1026. The Ninth Circuit has explained:

> The test for determining whether the trial judge should have granted a substitution motion is the same as the test for determining whether an irreconcilable conflict existed. The court must consider: (1) the extent of the conflict; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel.

*Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (citations omitted).

Here, the record reflects that Wood was given an opportunity to address his concerns with counsel to the court, and there is no indication that Wood was in any way prevented from sharing his concerns with the court. Furthermore, Wood fails to demonstrate that he had a valid basis for demanding new counsel. *See United States v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (finding inquiry adequate where defendant "was given the opportunity to express whatever concerns he had, and the court inquired as to [defense counsel's] commitment to the case and his perspective on the degree of communication"). With respect to the nature and extent of the alleged conflict with counsel, the substance of Wood's complaints appear to amount to a disagreement over defense trial tactics and complaints that are considered and rejected with respect to this claim. However, it is well-established that tactical matters are within the purview of trial counsel's discretion and disagreements over them do not necessitate substitution of

10

counsel. *United States v. McKenna*, 327 F.3d 830, 844 (9th Cir. 2003) (holding that dispute over trial tactics "is not a sufficient conflict to warrant substitution of counsel"). Because Wood fails to demonstrate that the facts enumerated by the Ninth Circuit in *Daniels* weighed in favor of granting his substitution motion, Wood cannot show that he was denied his Sixth Amendment right to counsel and is therefore not entitled to relief on that argument either.

With regards to his claim that counsel failed to perform an adequate investigation, Wood fails to specifically identify what his counsel could have discovered had he conducted a more thorough investigation of the evidence at issue. The Ninth Circuit has routinely rejected ineffective assistance of counsel claims based on a failure to investigate where the petitioner has not identified the specific exculpatory evidence that should have been presented. *See, e.g., Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir. 1996) (petitioner failed "to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds"); *Hendricks v. Calderson*, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the *Strickland* test.").

Wood additionally alleges that counsel was ineffective for not moving to suppress admissions he made to law enforcement when he brought the victim to the hospital. But as the trial court noted when he raised this complaint during his substitution hearing, Wood was not in custody when he made the statements at issue. *See Miranda v. Arizona*, 384 U.S. 436, 469-70 (1966) (defining custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way"). Counsel therefore had no basis to object to the admission of the statements.

11

Similarly, Wood contends that counsel should have moved to dismiss on the basis that the victim did not adequately identify him. However, the trial transcript supports that Wood admitted hitting the victim; his defense was that he had a legal basis for doing so. Likewise, Wood complains that trial counsel did not inform him of his right to address the court at sentencing. The record, however, indicates that Wood addressed the court at sentencing, and he therefore fails to prove prejudice.

Wood also makes an unsubstantiated attack on the mental health of his attorney and avers, without further facts or support, that trial counsel was involved in a conspiracy with the trial court and the prosecutor. Such baseless claims are clearly insufficient to merit relief. *See Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) ("self-serving statement" insufficient on its own to raise claim for relief).

Finally, Wood faults counsel for failing to consult an expert or request a number of jury instructions. As discussed in Ground 2, *infra*, none of the instructions Wood now identifies was warranted. Nor does Wood show that an expert would have been able to opine that Wood did not intentionally hit the victim with a fire extinguisher or that he did it in self-defense. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that an expert would testify on petitioner's behalf is insufficient to establish *Strickland* prejudice); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).

Wood also alleges that appellate counsel was ineffective for failing to raise each of the claims he brought on collateral review. But because Wood raised all the proposed appellate claims and was afforded no relief, Wood fails to show that appellate counsel was deficient or that

he was prejudiced by the omission.  In sum, Wood is not entitled to relief on any argument

advanced in support of this ground.

**Ground 2.**    *Instructional Errors*

Wood next argues that the trial court should have *sua sponte* provided a number of

instructions that would have allowed the jury to find that Wood's hitting the victim with a fire

extinguisher was legally excused.[7]  Because jury instructions in state trial are typically matters of

state law, federal courts are bound by a state appellate court's determination that a jury

instruction was not warranted under state law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)

(noting that the Supreme Court has repeatedly held that "a state court's interpretation of state

law, including one announced on direct appeal of the challenged conviction, binds a federal court

sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir.

1995).  An instructional error, therefore, "does not alone raise a ground cognizable in a federal

habeas proceeding."  *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable

likelihood that the jury has applied the challenged instruction in a way that prevents the

consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380

(1990).  The question is whether the instruction, when read in the context of the jury charges as a

whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471

U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary

---

[7]    Specifically, Wood claims that "at least" the following instructions should have been given: 1) citizen's arrest (CAL. PEN. CODE § 837); 2) mistake of fact (CALCRIM 3406); 3) mistake of law (CALCRIM 3407, 3411); 4) claim of right (CALCRIM 1863); 5) necessity (CALCRIM 3403); 6) accident (CALCRIM 3404); 7) involuntary intoxication (CALCRIM 3427); and 8) right to eject trespasser (CALCRIM 3475).

that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.* Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72. Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

Wood presents no facts in his Petition, and did not present any evidence at trial, to warrant such instructions. At trial, Wood testified that, on the night in question, he was awoken by the sound of his car alarm, and he and his wife drove in their vehicle to locate the person who had set off the alarm. Soon, they saw the victim stopped at a traffic light, and Wood approached the driver's side window. Wood testified that the victim, while seated behind the closed door, turned toward Wood with raised fists. Wood claims that he struck the victim with the fire extinguisher he was carrying "to block him from hitting me." Consistent with Wood's theory of the case, the court instructed the jury as to self-defense and that, as to each count, Wood must have not acted in self-defense. There simply was no evidence that the victim had committed any crime, and to the extent the instructions raised in this claim supported Wood's self-defense theory, by finding Wood guilty, the jury necessarily rejected the self-defense theory. Wood demonstrates no reasonable probability of a different result had any of these eight instructions be given. The state courts' rejection of Wood's instructional error claim is therefore not unreasonable or contrary to Federal law, and he is not entitled to relief on this claim.

**Ground 3.** *Fourth Amendment Violation*

In Ground 3, Wood challenges his "illegal seizure and arrest" on various Fourth Amendment[8] grounds ranging from lack of probable cause to false statements by witnesses. His

---

[8] The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

claim, however, is not cognizable on federal habeas review because his arguments are precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Ninth Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Oritz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). California provides such an opportunity, *see* CAL. PENAL CODE § 1538.5; *Gordan v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990), and thus Wood's Fourth Amendment claim is not cognizable here.

**Ground 4.**     *Inadequate Notice*

Wood additionally challenges the notice supplied by California Penal Code § 1192.7, which defines a "serious felony" and sets forth a series of crimes that are automatically charged as a strike offense that could enhance a sentence on a later-committed felony under the State's three strikes law. According to Wood, he could not have known at the time of the incident that his use of a fire extinguisher could qualify his act as assault with a deadly weapon. Here, however, while the information alleged that Count 1 (assault with a deadly weapon) was a

serious felony within the meaning of § 1192.7, the record indicates that neither the judge nor the jury found the allegation to be true. The allegation thus did not affect Wood's sentence, and he is not entitled to relief. *Cf. Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir. 2010) ("Section 2254(a)'s language permitting a habeas petition to be entertained 'only on the ground that [the petitioner] is in custody *in violation of the Constitution or laws or treaties of the United States*," (emphasis added), explicitly requires a nexus between the petitioner's claim and the unlawful nature of the custody." (quoting *Dickerson v. United States*, 530 U.S. 428, 439 n.3 (2000)).

**Grounds 5, 7.**          ***Sentencing Error***

Wood also claims that his sentence is illegal. Although not entirely clear, it appears that Wood challenges the validity of his prior convictions and whether they qualify as strikes for purposes of the three strikes law, which is also the basis for Ground 7, "insufficient evidence for prior strike determination."[9]

Generally speaking, habeas corpus relief is available only to a prisoner who is challenging a conviction if he is serving his sentence for that conviction. *See* 28 U.S.C. § 2254. Where he is no longer in custody on the charge that he is challenging, the district court is without

---

[9]          Wood raised the claim in Ground 7 on direct appeal in which he contended that the five-year enhancement for his prior § 246.3 conviction must be stricken because the evidence was insufficient to show that he personally discharged a firearm. *See Wood*, 2015 WL 5121442, at *4-5. This claim fails here for the additional reason that this Court is bound by the state court's determination that the prior conviction qualified as a serious felony under state law. *Cf. Emery v. Clark*, 643 F.3d 1210, 1215-16 (9th Cir. 2011) (per curiam) (overruling prior Ninth Circuit precedent interpreting the gang enhancements in the California Penal Code and recognizing "the California Supreme Court's authoritative interpretation"); *see also Hicks v. Feiock*, 485 U.S. 624, 629–30 & n. 3 (1988) (noting that a state appellate court's determination of state law is binding and must be given deference); *West*, 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.").

jurisdiction to entertain the challenge. *See id*.; *Maleng v. Cook*, 490 U.S. 488, 492 (1989). A petitioner may satisfy the "in custody" requirement with regard to an expired sentence, however, if he can show that he is challenging a current sentence that was enhanced by an allegedly invalid prior conviction, as long as the prior conviction is still subject to direct or collateral attack. *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 401-04 (2001) (holding state court convictions no longer open to direct or collateral attack are conclusively valid and, if these convictions are later used by a state court to enhance a criminal sentence, such sentence may not be challenged "through a [habeas] petition . . . on the ground that the prior conviction was unconstitutionally obtained").[10]

Under the applicable statute of limitations governing habeas corpus petitions in the federal courts, 28 U.S.C. § 2244(d)(1), the time for challenging Wood's two 1994 robbery convictions and his 1997 discharge of a firearm with gross negligence conviction has long past. Accordingly, Wood is barred from using his § 2254 Petition to challenge the sentence enhancements from state convictions that are no longer open to direct or collateral attack.

**Ground 6.** *Prosecutorial Misconduct*

Finally, Wood contends that the prosecutor committed misconduct through "the use of deceptive and reprehensible methods to persuade the court and jury that falsehoods were true." According to Wood, during summation the prosecutor "presented comments to the jury which had no bearing on any fact in evidence or any disputed fact. The only reasonable explanation being to inflame the passions of the jurors."

---

[10]     Convictions that are obtained without counsel are also excepted from this rule. *Coss*, 532 U.S. at 404. Wood does not allege that he was unrepresented during any of the prior convictions used to enhance his current sentence; therefore, this exception does not apply.

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To prevail on such a claim, a petitioner must show that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Moreover, "[o]n habeas review, constitutional errors of the 'trial type,' including prosecutorial misconduct, warrant relief only if they 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Brecht*, 507 U.S. at 637-38 (1993)).

Under clearly established federal law, a prosecutor's incorrect and improper comments will be held to violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam) (quoting *Darden v. Wainright*, 477 U.S. 168, 181 (1986)); *see Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir. 2000). In determining whether the prosecutor's remarks rendered a trial fundamentally unfair, the remarks must be analyzed in the context of the entire proceeding. *Boyde*, 494 U.S. at 385; *Darden*, 477 U.S. at 179-182. Even when prosecutorial misconduct rises to the level of a due process violation, such misconduct provides grounds for habeas relief only if that misconduct is prejudicial under the harmless error test articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004).

Upon independent review of the challenged comments in light of these guidelines, the Court concludes that the state courts' rejection of Wood's claims was neither contrary to, or an unreasonable application of, clearly-established federal law. For example, Wood complains that

the prosecutor referred to Ramirez as "the victim" and to Wood as "this person" or "defendant," which is typical in criminal trials and does not infect the trial with unfairness. Wood also objects to the veracity of the prosecutor's descriptions of the events as they happened**,** but the record supports that the prosecutor's statements were a fair comment on the evidence presented at trial. Although Wood disagrees with the prosecutor's theory of how the events unfolded, he was given an opportunity to present his conflicting version of events, which the jury apparently found not credible. In sum, none of the comments challenged by Wood appear to be improper, much less rise to the egregious level required for habeas relief. Wood is thus not entitled to relief on his prosecutorial misconduct claim.

## V. CONCLUSION AND ORDER

Wood is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 8, 2019.

    /s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
